UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Charlie M. Wilson,<br><br>　　　　　　　　Debtor. | Case No.:　　　19-32574-ABA<br><br>Chapter:　　　13<br><br>Judge:　　　Andrew B. Altenburg, Jr.<br><br>Hearing Date:　　　November 29, 2022 |

**MEMORANDUM DECISION**

### I.　　INTRODUCTION

The debtor, Charlie Wilson, and his wife, Patricia, wrote a letter to the court alleging that he never authorized his attorney to file this bankruptcy case and as such, asked this court to expunge the record of Mr. Wilson's bankruptcy case or for other relief. Based upon that letter, the court issued an Order to Show Cause Whether Bankruptcy Filing was Authorized. As the court finds that there is ample evidence to the contrary and no extraordinary reason to grant the relief requested, the request, and the court's Order to Show Cause issued against the debtor's attorney, will be denied.

### II.　　JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 23, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1). Venue is proper in this court pursuant to 28 U.S.C. § 1408. Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.

### III.　　DEBTOR'S ALLEGATIONS

To be clear, there is no formal motion with supporting documents seeking relief. Instead, this matter is on the court's own Order to Show Cause Whether Bankruptcy Filing was Authorized based upon the allegations in Mr. Wilson's letter. *See* Doc. No. 20. In that letter, the Wilsons allege that in October 2019 they met with attorney Fred Braverman to file a chapter 13 bankruptcy for both of them. *Id*., ex. A, p. 4. The Wilsons paid him $1,600 for his work. Mr. Braverman advised them in late November 2019 that the monthly chapter 13 trustee payment would be $6,000. *Id.* The Wilsons then decided not to go through with the filing. *Id.* They allege that they then informed Mr. Braverman and believed that he accepted their decision. *Id.* The Wilsons state that

they did not request a refund because they knew Mr. Braverman had put a lot of effort into their case. *Id.*

The Wilsons then allege that in December 2019, Mr. Braverman filed the case anyway, without the Wilsons' knowledge. *Id.* They "could only think that Attorney Braverman failed to follow through with [b]ankruptcy court to remove or cancel the Wilson's [sic] case." *Id.* The Wilsons state that they were not informed of the filing, or of any hearings, and do not recall receiving any notice to attend a hearing: they would have appeared had they known.

In February and March 2020, the Wilsons "assumed this matter was behind us and that we no longer had any further obligations to the bankruptcy court." *Id.* Then the Covid pandemic arrived, "caus[ing] mass confusion and significant communication problems. [The Wilsons allege that] [b]ankruptcy court, offices, business, jobs, mail delivery and traveling on roadways were required to be shut down." *Id.* Again, the Wilsons state they had no idea that their case had been filed and that they would be held accountable for failure to appear or to fulfill follow-up requirements, such as providing financial records and federal income tax returns and paying court fees. *Id.*, p. 5. These "would have been very easy to accomplish, especially with the assistance of Attorney Braverman." *Id.* "Of course, most certainly, all mail delivery was impacted by the pandemic and government closings, etc. that transpired, which most certainly created the impossibility for appropriate responses and follow up." *Id.*

Two years later, in April 2022, when the Wilsons wanted to purchase a home, they state they began addressing their credit problems by paying off bills, filing credit disputes, and hiring one company to resolve federal income tax issues and another to repair credit. *Id.* They were "shocked" to learn that their credit reports included a dismissed chapter 13 bankruptcy case. *Id.* They wrote their real estate agent, mortgage lender, credit repair company, and all three credit bureaus stating that "to the best of our knowledge the dismissed chap [sic] 13 was not accurate and that the filing we thought was canceled by our [a]ttorney." *Id.* They say that Experian removed the bankruptcy from its report, but the other agencies did not. *Id.* Despite raising their credit score from the 400s to over 650, the Wilsons were informed that with the bankruptcy filing on record, they could not purchase a home. *Id.*

The Wilsons contacted Mr. Braverman twice to ask for help in removing the record of the bankruptcy filing, but he told them there was nothing he could do. *Id.* They contacted the bankruptcy court and received information on why their bankruptcy case had been dismissed. *Id.*, p. 6. They state that they could have complied with all of the issues, had they only known. *Id.*

They now plead that "due to the mercy of the court, impact of the pandemic and the extraordinary circumstances related to our case and [a]ttorney . . . that the court would agree to helping us with a solution that would allow us to purchase a home by removing or purging the bankruptcy from our file; Or [sic] by offering supportive language in the file that would help a mortgage lender understand that the bankruptcy should not be held against the Wilson's [sic]." *Id.*

In light of the Wilsons' allegations, this court issued an Order to Show Cause for Mr. Braverman to show whether the bankruptcy filing was authorized. Doc. No. 20.

IV.     **THE EVIDENCE**

The docket reflects that Mr. Wilson, only, filed a chapter 13 bankruptcy case on December 3, 2019. Doc. No. 1. With the petition, he filed a chapter 13 plan, as well as a Certificate of Credit Counseling that showed he had obtained counseling on October 2, 2019. Doc. Nos. 2, 3. The case was dismissed at confirmation on February 27, 2020. Prior to that, the court issued a Notice of Chapter 13 Bankruptcy Case that was served on Mr. Wilson. Doc. Nos. 4, 10. A Notice of Hearing on Confirmation of Plan was issued December 5, 2019 and served on Mr. Wilson. Doc. Nos. 6, 8. A Notice to Debtor and Debtor's Counsel to Commence Payments Pursuant to 11 U.S.C. section 1326 was issued December 5, 2019 and served on Mr. Wilson. Doc. No. 9. A Notice of Requirement to File Financial Management Course Certificate was issued February 24, 2020 and served on Mr. Wilson. Doc. Nos. 13, 14. The case was dismissed by order entered February 27, 2020, with the order served on Mr. Wilson. Doc. Nos. 15, 16, 17. The court's docket, does not show that any of the mailings sent directly to Mr. Wilson were returned for any reason such as being undeliverable.[1]

Both the chapter 13 trustee and Mr. Braverman responded to the court's Order to Show Cause. In addition to the above notifications, the trustee stated that on December 5, 2019, she mailed Mr. Wilson a "welcome" letter advising him of the documents needed to conduct the meeting of creditors. Doc. No. 22, p. 1 and ex. A. Due to Mr. Wilson's failure to provide to her certain documents, she could not conduct the meeting. *Id.*, p. 1. She recommended dismissal at the February 26, 2020 confirmation hearing based on the failure to provide proof of income, provide tax returns, submit plan payments and failure to appear at the meeting of creditors. *Id.*

Mr. Braverman's response is more damning.[2] He attached copies of the wet-ink signature pages of the bankruptcy petition. Doc. No. 23, ex. A. He attached screen shots of text messages sent by Mr. Wilson in December 2019, including one urging Mr. Braverman to file the bankruptcy soon to avoid a wage garnishment and another thanking him when the bankruptcy filing was done:

> December 1, 2019, at 11:29 a.m.: Attorney Braverman, Hoping to avoid next garnishment. Is it possible to get fax of scanned email declaration of chapter 13 filing sent to me this Monday, 12/2….
>
> December 2 at 6:00 p.m.: Any update?
>
> December 2 at 9:05: It's urgently important that I notify payroll dept. tomorrow. I promised them today and are holding up payroll on my behalf. Tomorrow by noon is the absolute deadline. Please let me know which way to go with this. I feel like

---

[1] "If a document is properly mailed, the court will presume the United States Postal Service delivered the document to the addressee in the usual time." *Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. C.I.R.*, 523 F.3d 140, 147 (3d Cir. 2008) (citing *Rosenthal v. Walker,* 111 U.S. 185, 193 (1884); *see also Hagner v. United States,* 285 U.S. 427, 430 (1932)). *See In re Forson*, 583 B.R. 704, 717 (Bankr. S.D. Ohio 2018) (presuming defendant received orders that Bankruptcy Noticing Center declared under penalty of perjury that it had sent to address on file).

[2] Mr. Braverman's response was timely served on Mr. Wilson at his current address. *See* Doc. No. 24.

> my job could be in jeopardy because these people work for me and are holding up payroll to help me.

*Id.*, ex. B.

Mr. Braverman attached a copy of Mr. Wilson's handwritten note with the name and fax number of his payroll office, a copy of the fax cover page, and December 3, 2019 (the case filing date) proof of transmission. *Id.*, ex. C.

Mr. Braverman states that it was not until December 27, 2019 that Mr. Wilson indicated via text that he had second thoughts about proceeding with the bankruptcy. Doc. No. 23, ¶ 8, and ex. E. That text stated:

> Attorney Braverman, Pat and I have decided that we need to go a different direction and cancel bankruptcy. There is no way we can afford to pay 5100+ Pat's payment[3] each month for the next 5 years. At age 64 almost at retirement, we have to be honest with ourselves, I have impending knee replacement surgery for both knees and Pat['s] work schedule is to [sic] inconsistent and unpredictable. We tried to move but because of our credit record we can not get approval. We are stuck. Please take the appropriate steps to cancel the impending chap [sic] 13 for both of us. Because of all the work you put into this we will not be requesting any refunds. We greatly appreciate all you have done to help us. Sincerely!

Doc. No. 23-5, ex. E.

Mr. Braverman stated that he then spoke with Mr. Wilson by telephone and discussed the options. Doc. No. 23, ¶ 8. He stated that they discussed the upcoming meeting of creditors on January 10 and the additional documents required by the trustee. *Id.* Mr. Braverman stated that he advised Mr. Wilson that if he failed to attend the meeting of creditors or supply the documents, the trustee would move to dismiss the case. *Id.* He stated that Mr. Wilson instructed him to allow that to happen. *Id.*

Mr. Braverman stated that in 2021, Mr. Wilson contacted him regarding removing the bankruptcy filing from the court record because it was appearing in his credit history. *Id.*, ¶ 10. In that email, regarding the filing of the bankruptcy case, Mr. Wilson made contradictory statements, first seemingly acknowledging that the case was filed and then dismissed, then averring that it never had been filed:

> As you know we decided to not go forward with the chapter 13 bankruptcy in December 2019. And the case was dismissed.
>
> As you may recall the bankruptcy was never started and was dismissed before it started.

---

[3] At the November 29 hearing, the Wilsons seemed to indicate that the plan was for Mrs. Wilson to file her own case.

> This is all about seeking your help to get the dismissed bankruptcy record removed from my public record. . . .

Doc. No. 23-7, ex. G. Mr. Wilson also again revealed his urgency in removing the bankruptcy filing from his credit history:

> According to my lender I am qualified to purchase a home right now with only one remaining stumbling block which is the need to remove the dismissed bankruptcy from my public record/SSN.
>
> Otherwise, despite our now being qualified to purchase a home with a 656 credit score, good employment and capability to make the down payment the only thing standing in our way is your assistance with getting the bankruptcy removed from my public record.
>
> Timing is of the essence in that my current landlord has sold the rental property where we live, and we need to move by the end of March.

*Id.*

His text the following day asserted that "As you may recalled [sic] Pat and I decided against filing for bankruptcy and never went through with it." *Id.* Mr. Braverman advised Mr. Wilson that he was not aware of any way to remove something from the court records. *Id.* On February 25, 2022 he received an email and on February 26, 2022 a text from Mr. Wilson, again asking to get the bankruptcy removed from the court record. *Id.*, ¶ 11 and ex. G. Mr. Braverman again advised that he did not know how to do this.

The matter had been adjourned from time to time as an accommodation to the parties. Then, a hearing was held on November 29, 2022, at which time Mr. Wilson, his wife, Mr. Braverman and Isabel Balboa, the standing Chapter 13 Trustee, appeared. At that time, Mr. Wilson and to some extent, his wife (collectively, the "Wilsons"), argued his case but conceded that he had no evidence to refute the evidence presented above–nor did he produce any further evidence to refute the relevant facts here. He did argue that he and his wife were both supposed to file a bankruptcy case, either jointly or separately, and contrary to his position that he wanted his bankruptcy cancelled, he suggested that if he knew he could simply cure the open items that ultimately lead to the dismissal of the case, he would have. However, none of the arguments made by the Wilsons were relevant to the core issue presented to the court: was there an unauthorized filing warranting the expungement of the case from the public records or other relief.

Finally, the court takes judicial notice that this was not the first time Mr. Wilson filed bankruptcy. On August 31, 2011, the Wilsons filed a joint chapter 13 bankruptcy case with the assistance of Mr. Braverman. Bankr. No. 11-36004-JNP. The Wilsons obtained chapter 13 discharges on December 15, 2016. *Id.*, Doc. No. 55.

V.     DISCUSSION

The Wilsons ask this court to expunge the record of Mr. Wilson's bankruptcy filing or add language to the case file to assure a mortgage lender that the filing should not be held against him, so that Mr. Wilson's credit rating will be improved. Here is what one court asserted a bankruptcy court could do when a bankruptcy filing is unauthorized:

> (1) it can order that the bankruptcy filing be expunged and thereby require that all documents related to a bankruptcy filing be destroyed and removed from the public record; (2) it can make a notation in the bankruptcy file itself to the effect that the bankruptcy petition was filed fraudulently and thereby "allow any entity that was interested in the course of the bankruptcy to conclude that the matter was, in fact, fraudulent"; or (3) it can order the clerk of the court to delete all references to the debtor's name on the case dockets and thereby make the debtor's filing not appear when the bankruptcy court's docket is searched by the debtor's name. Additionally, a court can declare a bankruptcy filing "null and void," which is best thought of as making a notation and not akin to expungement as the term and some decisions may suggest.

*In re Joyce*, 399 B.R. 382, 385 (Bankr. D. Del. 2009) (citing *In re Buppelmann,* 269 B.R. 341, 343 (Bankr. M.D. Pa. 2001)).

*Buppelman* found its source of power to do the above in section 105(a), which permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). But section 107 of the Bankruptcy Code mandates that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). Thus, expungement would not be necessary or appropriate to carry out the provisions of title 11. *See In re Murphy*, 18-71012, 2022 WL 2288241, at *14 (Bankr. C.D. Ill. June 23, 2022) (stating that the reasoning of *Buppleman* is incompatible with Seventh Circuit precedent); *In re Joyce*, 399 B.R. 382, 386 n. 2 (Bankr. D. Del. 2009):

> I view expungement as more akin to the protection from harm caused by an entity to a debtor or a certain party contemplated by § 107(b)(2) and not as akin to the broad equitable power to further the tenets of the Bankruptcy Code contemplated by § 105. Therefore, it seems that § 107(b)(2), and not § 105, is the more appropriate source of a bankruptcy court's authority to order expungement.

*See also In re Scholz*, 01-02555, 2010 WL 1257826, at *1 (Bankr. D.D.C. Mar. 26, 2010) (holding that court does not have authority under section 105 to expunge a bankruptcy case).

Even if this court agreed that section 105(a) gives it the power to remove a bankruptcy filing from the docket, "expungement is an extraordinary remedy only utilized in the rarest of circumstances." *Buppelmann*, 342. Without question, the facts presented and conceded to, as well as the arguments of the Wilsons show that the bankruptcy filing was indeed authorized by Mr. Wilson and it was filed in accordance with his explicit instruction, after which Mr. Wilson had a change of heart. But, Mr. Wilson's regret, three years after the fact, of the filing the bankruptcy

case is not the kind of circumstance that merits an extraordinary remedy. *Compare In re Purkiss*, 6:18-BK-2219-TPG, 2022 WL 2442306, at *2 (Bankr. M.D. Fla. June 29, 2022) ("[E]xpungement is an extraordinary remedy that bankruptcy courts decline to grant simply because a debtor changes his or her mind about filing bankruptcy or suffers from the bankruptcy case's effect on a credit report."); *In re Ploetz*, 19-27785-BEH, 2022 WL 190429, at *1 (Bankr. E.D. Wis. Jan. 20, 2022) ("Because there is no indication in the record that his case was filed without his authorization or the filings were untrue, the [c]ourt finds no basis in the Code to vacate his discharge or expunge the full record."); *and In re Woods*, 05-32207, 2007 WL 1306427, at *2 (Bankr. W.D. Mo. May 1, 2007) ("the [c]ourt does not believe it is appropriate to nullify or void a legal proceeding that was initiated voluntarily. . . ."), *with In re Storay*, 364 B.R. 194, 196 (Bankr. D.S.C. 2006) (expunging filing, basing finding that debtor did not authorize the filing on credible testimony, inconsistencies between the actual petition and the electronic petition filed with the court and other factors in the case, and history of the attorney's failure to meet requirements in 37 other cases filed within that timeframe).

One court felt the "[debtor] does deserve some form of relief" and declared the bankruptcy petition "null and void." *In re Whitener*, 57 B.R. 707, 710 (Bankr. E.D. Va. 1986) ("In doing so the Court believed expungement is neither necessary nor proper…there has been no showing that expungement is required to protect [debtor's] rights."). *But see In re Woods*, 05-32207, 2007 WL 1306427, at *2 (denying request "null and void" their bankruptcy case, stating, "absent clear statutory or precedential authority to do so, the Court does not believe it is appropriate to nullify or void a legal proceeding that was initiated voluntarily….").

Though according to the Wilsons, one credit reporting agency removed the bankruptcy from its report, the information reported by the others is accurate – an authorized chapter 13 bankruptcy case was filed and dismissed – therefore the Wilsons could not succeed in showing a credit agency violated 15 U.S.C. § 1681. *See Nagim, v. Equifax Info. Servs. LLC*, 2011 U.S. Dist. LEXIS 49424, at *13 (D. Colo. 2011) ("Because Plaintiff cannot prove that any information was inaccurate, he cannot prevail on his first claim that Equifax violated 15 U.S.C. § 1681i."); *Covington v. Equifax Info. Servs.*, 2020 U.S. Dist. LEXIS 69384, at *17-18 (D.N.J. 2020) ("Complaint 'fails to state factually how, why or in what manner' any information Plaintiff disputes is inaccurate."); *Bibbs v. TransUnion LLC*, 43 F.4th 331, 342 (3d. Cir. 2022) ("An inaccuracy is the threshold requirement for a § 1681e(b) claim").[4]

The Bankruptcy Code does allow a court to protect an entity with respect to "trade secrets or confidential development, or commercial information," as well as "scandalous or defamatory matter," 11 U.S.C. § 107(b), and to the extent that "disclosure of information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c). But what occurred to the Wilsons would not be considered "scandalous" or "defamatory." *See In re Chapman*, 2021 Bankr. LEXIS 764, at *22, *23 (Bankr. E.D. Wis. 2021) ("[T]he Court cannot conclude that [debtor's] bankruptcy filings are 'scandalous' or 'defamatory,' and thereby subject to the protection of § 107(b). . . . [Debtor's] concern that creditors will see three bankruptcy cases … does not alter the Court's inquiry."); *In re Neal*, 461 F.3d 1048, 1054

---

[4] Moreover, the Federal Trade Commission, not this court, has the power to enforce the Fair Credit Reporting Act. *In re Whitener*, 709.

(8th Cir. 2006) ("Potential scandal only surfaces when one looks 'outside the lines' of the bankruptcy proceeding, looks outside the context of this bankruptcy filing, and speculates as to motives of the creditor and the debtor."). The Wilsons allege none of these bases for their expungement request.

Nor does this court find appropriate their request for a notation in the case file to assure mortgage lenders of the Wilsons' credit-worthiness. Concerns such as credit-worthiness are an insufficient basis to expunge a bankruptcy case under section 105(a). *See In re Ploetz*, 19-27785-BEH, 2022 WL 190429, at *9 ("[Debtor's] concerns about ill effects on his credit report, difficulty in being able to rent an apartment or eligibility for a business grant… are . . . circumstances that arose outside the bankruptcy case[,]" that do not warrant expungement.).

It is clear that Mr. Wilson authorized this bankruptcy filing. He sent messages to Mr. Braverman urging him to file the case as soon as possible to stop garnishment of his wages. Mr. Braverman produced a copy of the wet-ink signature page of the petition. *In re T.H.*, 529 B.R. 112, 120 (Bankr. E.D. Va. 2015) (stating that "failure to produce the wet signature on a petition leads to the conclusive presumption that the signature does not exist."). If authorization exists courts usually do not expunge the petition. See *In re O'Connor*, 2011 Bankr. LEXIS 150, at *5 (Bankr. D.D.C. 2011) (denying motion to annul petition after finding that the debtor failed to demonstrate that the case was filed without his authorization, or that, if without his authorization, that annulment would serve any purpose). Messages from Mr. Wilson regarding changing his mind about bankruptcy were not sent until the 27th of December, 24 days after the bankruptcy commenced and after numerous notices regarding the bankruptcy had been served on Mr. Wilson.[5]

Nothing in the Bankruptcy Code allows the court to relieve a filer's remorse. Even the *Buppleman* court ultimately did not order expungement: for one debtor discussed in its decision, it placed an alert that the filing occurred as a result of fraud committed by someone other than the debtor, and for the other debtor discussed, denied any relief after finding that the filing was only the result of a "poor choice of workout alternatives." *Id.*, 343. And while the court fully understands the impact that the authorized filing and dismissal is purportedly having on the Wilsons, neither the Bankruptcy Code nor the circumstances of this case allow the court to expunge the record or provide any other relief requested.

---

[5] The court is concerned with the Wilsons' allegations, albeit not made under penalty of perjury, that they were unaware that the bankruptcy case was filed. The case was filed December 3, 2019 and dismissed February 27, 2020, before the covid pandemic shut down much of this country in March 2020. But even had they filed after mid-March 2020, the court questions their assertion that the pandemic stopped U.S. mail delivery. Mr. Wilson was served with notices of the bankruptcy filing, the meeting of creditors, the need to commence payments, the confirmation hearing, and the requirement to file a financial management course certificate.

## VI.　CONCLUSION

Based on the foregoing, both the Order to Show Cause and Mr. Wilson's requests for relief are denied.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: November 30, 2022